UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAIME BELIGOTTI-FENTI,

Plaintiff,

-vs-

PAYCHEX, INCORPORATED,

Defendant.

DECISION and ORDER
08-CV-6019

---

**APPEARANCES**

For Plaintiff:  Christina A. Agola, Esq.
2100 First Federal Plaza
28 East Main Street
Rochester, NY 14614
(585) 262-3320

For Defendant:  Todd R. Shinaman, Esq.
Nixon Peabody LLP
1100 Clinton Square
Rochester, NY 14603
(585) 263-1000

**INTRODUCTION**

**Siragusa, J.** In this employment discrimination case, Plaintiff alleges violations of the Family and Medical Leave Act ("FMLA"), including retaliation. The case is now before the Court on Defendant's motion (Docket No. 12) for summary judgment. For the reasons stated below, the motion is granted.

**BACKGROUND**

Paychex Incorporated ("Paychex") hired Plaintiff in January 2005 as a temporary employee. (Beligotti-Fenti Dep., at 18.) She worked as a Human Resources Services

Specialist in the Content Management Department at Paychex's John Street facility in Henrietta, New York. (*Id.*, at 18 & 20.) Plaintiff performed various clerical tasks, including data entry and scanning documents. (*Id.*, at 20.) Paychex made Plaintiff's position permanent in April 2005. (*Id.*, at 22.) She reported to Amy Parrow and Jessica Manchester, who in turn reported to Carrie Stella. (Stella Aff. ¶ 2.) When she was hired full-time, Plaintiff was given a Paychex Employee Handbook ("Handbook"). The Handbook contained the terms and conditions of her employment, including Paychex's FMLA leave policy. (Beligotti-Fenti Dep., at 23-25; Shinaman Aff., Ex. B (Receipt of Employee Handbook Form signed by Plaintiff on April 26, 2005); Shinaman Aff, Ex. C (Paychex Employee Handbook.)

Paychex employees in Plaintiff's department were required to inform a direct supervisor of the need to take time off. (Beligotti-Fenti Dep., at 30.) Plaintiff testified at her pretrial deposition that she has never had any ongoing illness or condition that caused her to utilize sick time. (*Id.*, at 36.) The parties, for the purposes of this motion, agree that Plaintiff's son has autism. (Paychex Mem. of Law, at 3.) During her employment with Paychex, Plaintiff took time off to be with her son, unrelated to his autism, including because a babysitter was unavailable. (*See* Shinaman Aff., Exh. H (email from Plaintiff to Amy Parrow (Sept. 5, 2006, 8:23 a.m.); Exh. I (email from Plaintiff to Lana Hadzlosmanovic (May 11, 2007, 7:55 a.m.).

Carrie Stella, manager of the ENS Department at Paychex, stated in an affidavit that,

> [a]ccording to Paychex personnel practices, when an employee's intermittent absences become excessive and the employee meets the length of service and hours requirements under the Family Medical Leave Act ("FMLA"), the

employee is informed of his or her right to apply for FMLA intermittent leave. Pursuant to this practice, Plaintiff was sent an email with information apprising her of her right to apply for FMLA leave on June 28, 2007 and providing her with instructions as to the forms that would need to be submitted.

(Stella Aff., ¶ 4.) Plaintiff, however, indicated she did not want to apply for FMLA leave.

Stella further related in her affidavit that,

> On October 3, 2007, Plaintiffs co-workers reported that Plaintiff made an inappropriate sexual comment to them during a car ride to an annual shareholders' meeting. In response, a sexual harassment investigation was conducted I, in consultation with others, determined that plaintiff was not truthful or forthcoming during the investigation. I determined that based on this conduct, and her prior record unrelated to absences, her employment should be terminated. She was terminated on October 8, 2007. The termination was completely unrelated to her absence record or any FMLA issue.
>
> In my role as Manager and in adherence to Paychex policy, I do not discriminate against employees who apply for and take FMLA leave. Over the past three years, at least 7 employees under my management have taken FMLA, including 5 who have taken intermittent FMLA leave, and none of these employees have been terminated.

(*Id*. ¶¶ 7-8.)

## STANDARDS OF LAW

### *Summary Judgment Standard*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing

that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d

Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

***Family Medical Leave Act***

The FMLA entitles an eligible employee to a total of twelve work weeks of leave during any twelve month period "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition. 29 U.S.C. § 2612(a)(1)(C) (2008). The Act requires that the employee give at least 30 days' notice to the employer where the leave is foreseeable, or if not foreseeable, then "as soon as practicable." 29 U.S.C. § 2612(e)(1); 29 C.F.R. § 825.303(a). The pertinent regulations provide as follows:

> (a) Timing of notice. When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case. It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave. *See* § 825.303(c). Notice may be given by the employee's spokesperson (*e.g.*, spouse, adult family member, or other responsible party) if the employee is unable to do so personally. For example, if an employee's child has a severe asthma attack and the employee takes the child to the emergency room, the employee would not be required to leave his or her child in order to report the absence

> while the child is receiving emergency treatment. However, if the child's asthma attack required only the use of an inhaler at home followed by a period of rest, the employee would be expected to call the employer promptly after ensuring the child has used the inhaler.

29 C.F.R. § 825.303(a) (73 FR 67934, 68073, Nov. 17, 2008).

In *Potenza v. City of New York,* 365 F.3d 165 (2004), the Second Circuit addressed the issue of retaliation under the FMLA and the appropriate standard to use for summary judgment. The court wrote:

> The regulations promulgated pursuant to the FMLA explain that "'[i]nterfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave," 29 C.F.R. § 825.220(b), and that "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." 29 C.F.R. § 825.220(c).

*Potenza*, 365 F.3d at 167. Though the Second Circuit did not resolve the issue of whether to apply the familiar *McDonnell Douglas* shifting burden analysis to *all* FMLA cases, it did determine that they should be applied to FMLA retaliation claims. *Id.*; *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161 (2d Cir. 2006).

***McDonnell Douglas Standard***

Under the standard established in *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792 (1973), a plaintiff bears the burden of proof and must ultimately establish, by a preponderance of the evidence, (1) membership in a protected group; (2) qualification for a position; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination*. See Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 63 (2d Cir. 1997). To establish that the adverse employment action occurred under circumstances giving rise to an inference of discrimination, a plaintiff may demonstrate that "similarly situated" employees who do not

share the plaintiff's protected characteristics were treated preferentially. *Id*.

Requirements for establishing a *prima facie* case are minimal. *See Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998). If a plaintiff is successful in demonstrating her *prima facie* case, then the burden shifts to his employer to articulate a legitimate, non–discriminatory purpose for its adverse employment action. *Id.* at 153 (citing *McDonnell Douglas, Corp. v. Greene*, 411 U.S. 792, 802 (1973)). The Second Circuit has held that "[a]ny such stated purpose is sufficient to satisfy the defendant's burden of production; the employer does not have to persuade the court that the stated purpose was the actual reason for its decision." *Austin v. Ford Model, Inc.*, 149 F.3d at 153.

Once the employer satisfies its burden, a plaintiff may prevail only if she presents evidence that the employer's proffered reasons are a pretext for discrimination. *Id*. A plaintiff, to demonstrate pretext, must show both that the proffered reason was false and that discrimination was the real reason. *Id*. In applying the *McDonnel Douglas* criteria to a case under the Age Discrimination in Employment Act, the Supreme Court has held that a plaintiff's *prima facie* case, combined with sufficient evidence for a reasonable fact finder to reject the employer's nondiscriminatory explanation for its decision, may be adequate to sustain a finding of liability for intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). Justice O'Connor, writing for a unanimous Court, said, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id*.; *see also Regional Economic Community Action Program, Inc. v. United States,* 294 F.3d 35, 49 (2d Cir. 2002).

**ANALYSIS**

Plaintiff's argument is that since Paychex knew of her son's autism and she took time off, and Paychex suggested she apply for FMLA leave, Paychex must have know that the time she took off, particularly June 6, 7 and 8, 2007, pertained to her son's illness. (Pl.'s Mem. of Law, at 7-8; Paychex Reply Mem. of Law, at 3.) For her argument, Plaintiff relies on *Spangler v. Fed. Home Loan Bank*, 278 F.3d 847 (8th Cir. 2002). That case, however, is distinguishable. In *Spangler*, the plaintiff was frequently absent as a result of mental illness and depression and, on the day prior to being terminated, alerted her employer "of her need for time off due to 'depression again'…." *Spangler*, 278 F.3d at 852. The Eight Circuit wrote that, "[i]n construing the facts in the light most favorable to Spangler, we view her uncontroverted statement that it was 'depression again' as a potentially valid request for FMLA leave." *Id*.

In response to Plaintiff's argument, Paychex counters:

> As stated in Defendant's Motion for Summary Judgment and made clear through Plaintiff's deposition testimony, Plaintiff provided no FMLA-qualifying explanation for her absences in June 2007. She attributed her absences from June 6 to June 8 to her own illness. (Pl. Resp. ¶ 13; TR 42). Plaintiff admitted that she does not have an ongoing illness or condition that caused her to use sick time while working at Paychex. (Pl. Resp. ¶ 7; Plaintiff's Counter Statement (hereinafter "Pl. Counter") ¶ 41; Affidavit of J. Beligotti (hereinafter "Pl. Aff") ¶ 16). Plaintiff took a floating holiday and vacation time on June 22, 25 and 26 without providing the reason therefore. (TR 46-49). As a result, Defendant was not on notice of any potential FMLA need related to these absences.

(Paychex Reply Mem. of Law, at 2.) Plaintiff's deposition exhibit 6 (Ex. F of Paychex's submissions) establishes that in June 2007, she was absent for the following dates with the following reasons listed in the exhibit:

| Date | Reason |
|------|--------|
| June 1 | sick using PTO |
| June 6 | sick using PTO |
| June 7 | sick using PTO |
| June 8 | sick |
| June 14 | late |
| June 21 | sick |
| June 22 | PTO |
| June 25 | floating holiday |
| June 26 | floating holiday |

In her deposition testimony, Plaintiff was asked the following questions and gave the following answers pertaining to her two days of sick hours used during the week ending June 8, 2007:

> Q. Does that refresh your recollection as to the reason for your absences for week ending 6/8/2007?
>
> A. Um, I have to answer that question by saying that I did not always indicate to the Supervisors or Manager that—what was happening if I said I wasn't well, it didn't necessarily mean that it was myself that wasn't well. Um, sometimes I would want to care for my son, if he needed me to attend to him, but, again, as I stated prior, I didn't always feel it was necessary to give them too much of my personal information, so I can't say—can say that this says that I wasn't well, but it doesn't mean that I necessarily was not going home to take care of my son or to go pick him up at the school. I didn't always tell them that that was the reason, so.
>
> Q. Other than this e-mail, did you give Ms. Stella—did you communicate with Ms. Stella otherwise about the reason for your being out that [sic] day?
>
> A. Um, not that I recall, no. I don't know.… I think it was more toward the end of June when I needed to tend to my son.…

(Beligotti-Fenti Dep., at 41.) The questioning continued to address the absences for the week ending June 22, 2007:

-9-

> Q. Does this [deposition Ex. 6] appear to you to be an accurate reflection of your absences, at least up through June of 2007?…
>
> A. Uh-huh.
>
> Q. I believe you indicated you cannot recall specifically the reasons for those absences; is that right?
>
> A. Uh-huh. Yes.
>
> (The following exhibit was marked for identification: Number 7.)
>
> Q. Could you look at the document marked Exhibit 7 and tell me what that is?
>
> A. I had—you have paid time off and then this floating holiday time off. I don't remember Paychex exactly, but had so many days off per year and I was requesting to take time off for these dates: June 25th, June 26th, June 22nd.

(*Id.*, at 45-46.) Exhibit 7 is a Vacation/Floating Holiday Request Form signed by Plaintiff and dated "5/30/07" (it is attached to Paychex's papers in support of the motion as Exhibit G), with the following request: "I am requesting to use the following date(s) as floating holiday: Monday, June 25, Thursday, June 26, 2007 and Friday, June 22." (Paychex Ex. G, at 1.) When asked why she requested time off on June 22, 25 and 26, Plaintiff responded:

> A. Um, it was—it was personal. It was personal. I needed to take some time off to—for—I was dealing with a lot and my son was dealing with a lot at that time, so—I don't believe I would need to—nothing. Nothing.
>
> Q. Did you tell anyone, your supervisors at the time why you were taking this time off?
>
> A. I did not.

(Beligotti-Fenti Dep., at 49:4-11.) After a short break in the deposition, Paychex's counsel asked again whether Plaintiff had told her supervisors why she took off the dates in June on Exhibit 7 and she responded, "I don't recall telling them that, no." (*Id.*, at 51:4.) At the end of June 2007, Plaintiff was called into Amy Parrow's office and was cautioned about taking time off. In that regard, Plaintiff further testified at her deposition:

> Q. Did you tell your Supervisors that, in other words, that this—these illnesses were related to the autism?
>
> A. Um, my Supervisors knew that my son has autism, but, um, like I indicated earlier, I did not always tell them why I was taking time off, no.

(*Id*., at 55:4-9.)

At the summary judgment stage, Plaintiff must show, *inter alia*, that she gave her employer sufficient notice of her need for FMLA leave. Plaintiff has failed to produce evidentiary proof in admissible form that she ever did so. Though Paychex is conceding, for the purposes of this motion, that Plaintiff's son had autism, no proof submitted on the motion shows that Plaintiff told her supervisors she was taking time off to care for "a son…[with] a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Plaintiff's deposition testimony, in fact, establishes just the opposite. Consequently, Plaintiff has not borne her burden of proving a *prima facie* case of a denial of FMLA leave by her employer. Moreover, even if she had established that Paychex was aware she was taking time off for the care of her son as a result of his health condition, she never complied with the requirement to obtain medical certification, and, in any event, suffered no adverse consequence as a result of her excessive non-FMLA-qualifying leave.

Turning to her retaliation claim, which Plaintiff characterizes as an interference claim, she has also failed to submit evidentiary proof in admissible form to support such a cause of action, under either theory. The proof establishes that Plaintiff was offered the opportunity to avoid any warnings with regard to excessive leave by retroactively applying for FMLA leave, but she refused to do. Thus, Plaintiff was never engaged in a protected activity since, despite being offered the opportunity to do so, she never exercised her rights under the FMLA. Moreover, even if couched as an interference claim, Plaintiff's own

testimony demonstrates that rather than interfere with her ability to exercise her rights under the FMLA, Paychex positively encouraged Plaintiff to apply for FMLA leave and, in fact, provided her with information and the forms with which to do so.[1] No rational jury could possibly find for Plaintiff on an interference claim.

Finally, even if Plaintiff had engaged in a protected activity, her termination was not related to absenteeism. She was ultimately fired on October 8, 2007, as a result of her untruthfulness during a sexual harassment investigation. Paychex has come forth with a legitimate, non–discriminatory purpose for its adverse employment action, and Plaintiff has not met her burden of showing both that the proffered reason was false and that retaliation for exercising her rights under the FMLA was the real reason for her termination.

## CONCLUSION

For the foregoing reasons, Paychex's motion (Docket No. 12) for summary judgment is granted. The Clerk is directed to enter judgment for Paychex and close the case.

IT IS SO ORDERED.

Dated: November 5, 2009
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[1] The forms provided pertained to either a health issue she was suffering, or caring for another—further evidencing Paychex's lack of knowledge that Plaintiff was taking time off to care for *her son's* illness.